## MEYERS v. UNITED STATES and three other cases.

Circuit Court of Appeals, Third Circuit. November 20, 1929.

Rehearing Denied December 26, 1929.

Nos. 4088–4091.

John M. Henry and Arthur F. Schmidt, both of Pittsburgh, Pa., for appellants.

John D. Meyer, U. S. Atty., and Jos. A. Richardson and Ralph H. Smith, Asst. U. S. Attys., all of Pittsburgh, Pa.

Before BUFFINGTON, WOOLLEY and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The defendants-appellants were convicted under one of several indictments drawn to conform to the court's finding in United States v. Abbott, stated and discussed in United States v. Wills et al., 36 F.(2d) 855, where the government alleged and tried to prove one large comprehensive conspiracy entered into by seventy-three persons to violate the National Prohibition Act in the City of Pittsburgh but proved instead several small conspiracies embracing groups of the same defendants. The indictment with which we are presently concerned was directed against a group of thirty-five persons, defendants in the Abbott Case, who by its four counts were charged with conspiracy to sell, manufacture, possess and transport intoxicating liquor in violation of the law. When the case came on for trial the government found itself still confronted by some of the practical and legal difficulties which it encountered in the trial of the Abbott Case. In a further effort to conform its action to the decision in that case, the government, for want of sufficient evidence, entered a nolle prosequi as to eleven defendants and yielded to a plea in bar filed by another defendant. At the close of the case the court, on motions both by the government and certain defendants, directed verdicts of acquittal as to nine others. Finally the case was submitted as to seven defendants and the jury, by their verdict, found two not guilty and five guilty, including the four defendants here on appeal.

In the course of the trial the evidence of many witnesses proved, as the appellants themselves admit, that they had been extensively engaged in the sale of liquor over that portion of Pittsburgh known as the "South Side," but they point out that the offenses charged against them were conspiracies to violate the act, not violations of the

act itself, and urge that the conspiracies charged by this indictment, though purporting to be one of the small group conspiracies revealed in the Abbott Case, were not proved, but that, as in the Abbott Case, the government proved several still smaller and wholly unrelated conspiracies and therefore, under the law of the Abbott Case, United States v. McConnell (D. C.) 285 F. 164; Wyatt v. United States (C. C. A. 3d) 23 F.(2d) 791; and Coco v. United States (C. C. A.) 289 F. 33, the convictions cannot be sustained.

There is no question about the law. The only question is whether it applies to the facts. What happened was this:

■■ Taking as an example the count charging conspiracy to sell, and for convenience speaking of the conspiracies in the singular number, the allegations of the conspiracy were in the usual form, supplemented by a recital of overt acts specifying the parts which in some measure the several defendants played in the conspiracy. Keeping in mind that the essence of a conspiracy such as this is the unlawful agreement to violate a law, not its actual violation, and that the overt act required by section 37 of the Criminal Code (18 USCA § 88) and additional overt acts when pleaded are not parts of the crime, it may be that the overt acts stated in this case did not tell the whole story of the conspiracy; nor did they have to, for it is certain the government was not restricted to them in proving the conspiracy if properly pleaded in the indictment. Nor, it may be, did they tell the story with accuracy in details. The government was not required to prove the conspiracy precisely as indicated by *all* of the overt acts stated. Infirmity in one act did not nullify the strength of all others. It was of course bound to prove the conspiracy as pleaded, and as pleaded with at least one overt act. Certainly it could prove acts in addition to those stated and omit to prove some which were stated if still it proved the conspiracy alleged in the count, supported, as it must be, by a statement of one or more overt acts which implicated and connected the several conspirators.

■■ It developed early in the trial that the conspiracy centered on the three Meyers and Swift. There can be no doubt that the government tightly proved the complete conspiracy between them. In doing so, however, it failed to connect some of the other defendants with them, for lack of evidence, or because of the nolle prosequi entered, plea in bar granted and directed verdicts of acquittal rendered as to others—all done

without an objection by any defendant. These appellants now say that the government's failure to connect the other defendants with them was fatal because the change in the personnel and number of defendants, thus effected, amounted to an amendment to the indictment—in transitu, as it were—without the intervention of a grand jury. For reasons too plain to discuss we find no merit in this contention. Nor do we find that the appellants can escape conviction for the conspiracy which was proved as to them because the government failed to connect with them the other defendants who dropped out of the case in one way or another. It is evident that here, as in the Abbott Case, the government tried to prove too much and failed in its effort to connect every defendant with every other defendant but it did not fail to prove the Meyers brothers and Swift guilty of the conspiracy charged. In other words, the fabric of the conspiracy frayed out at the edges but the body remained. While we have followed the wanderings of the evidence in the light of the appellants' argument, we shall not repeat or discuss them here. We shall do no more than hold that this is not the Abbott Case where one conspiracy was charged and others proved, but is a case where one conspiracy was charged and, as to certain defendants, proved and as to others not proved. There was, therefore, no variance, United States v. Wills, 36 F.(2d) 855; there was a mere failure of proof as to related complicity of certain defendants with the defendants who were convicted upon the charge against them. The case therefore falls outside the law which the appellants have invoked and to which we adverted at the beginning of this discussion.

The next question—"whether the government may produce evidence not set forth in its Bill of Particulars"—seemed serious until it was discovered that there was no bill of particulars within the legal meaning of that term.

■ Before trial, sixteen of the defendants, including the appellants, filed petitions, each of which was entitled "Petition for Bill of Particulars" and concluded with a prayer that the court "require the United States Attorney to give a more particular description, in the nature of specifications or a Bill of Particulars, of the acts upon which he intends to rely." Pursuant to the court's order to that effect the government filed a long and elaborate statement involving many persons and touching many acts which it entitled "Bill of Particulars" but which is more accurately described by the opening sentence,

as follows: The United States Attorney, "in compliance with the order of court entered in the above entitled case, * * * amplifies with particularity the overt acts of the indictment so far as the facts are at the time of the filing hereof known." The paper is what it described itself to be—an amplification of the overt acts. The facts it states are but additional overt acts and are accorded no greater legal effect and fall under no different rule of evidence than if they had been first stated in the indictment. What we have said in respect to the proof of overt acts stated in or omitted from an indictment applies equally to overt acts brought into the case in this way.

The appellants' next contention—one to which we have given serious thought—is as follows:

"Whether the United States may introduce evidence of transactions subsequent to the date of the finding of the indictment, the time of the conspiracy pleaded in said indictment being between September 1, 1925, and the date of finding the indictment, June 9, 1928, when it also appears that a bill of particulars had been filed and the particular acts set forth were confined to this period, and it further appears that the testimony is introduced from witnesses whose names are not set forth in the bill of particulars."

Having regarded the so-called bill of particulars merely as an amplification of the overt acts of the indictment and having stated the rule of evidence applicable to overt acts, our answer to the question which the appellants have raised will be restricted to that part which inquires "whether the United States may introduce evidence of transactions subsequent to the date of the finding of the indictment."

In this connection dates are pertinent. The counts charge conspiracies continuing from September 1, 1925, to the date of finding the indictment which was June 9, 1928. The trial began on February 25 and closed on February 28, 1929.

The witness Buziko, having discontinued the business of butcher, equipped and opened a bar room. His testimony on the point in issue was as follows:

"Q. During 1926, '27, '28, did you sell any liquor at the bar? A. Yes, sir.

"Q. What kind? A. Moonshine. * * *

"Q. From whom did you buy your moonshine? A. Meyers. * * *

"Q. How many months did you buy from Meyers? A. Well, I ran it about six months before I ever started to sell moonshine. Then I started with Meyers and kept on with Meyers. * * *

"Q. Now what business did you have with Mickey (Meyers) in connection with this? A. Mickey delivered and collected. * * *

"Q. How did you first come to do business with Mickey? A. Jimmy Swift took me. * * *

"Q. When Jimmy Swift came to your place what did he say to you? A. I should buy stuff off of Meyers.

"Q. Well, why—Did you ask him? A. I said I did not have to buy off anybody, and he said that everything would be O. K., and I started to sell. * * *

"Q. After Jimmy told you it would be all right to buy it from them, what else happened before you got the delivery? A. Then I got the delivery. * * *

"Q. To whom did you give your order? A. Well, Jimmy sent up two cans after that.

"Q. And who collected for the first two cans? A. Mickey delivered and Mickey collected. * * *

"Q. Then after you first started to do business with Mickey did you deal with him regular? A. Yes, sir.

"Q. How long did you continue to do business with them? A. With them?

"Q. Yes, with Meyers? A. Oh, pretty near every week.

"Q. And when was the last time you bought any from Meyers? A. *About three weeks ago*.

"Q. That is what month? A. February, I believe—first part of February. * * *

"Q. Did anybody ever collect from you besides Mickey? A. No, sir."

The witness Nitoski, who kept a restaurant on the "South Side," testified as follows:

"Q. During 1926, '27, and '28, did you sell any liquor at your restaurant? A. Yes. * * *

"Q. After you stopped with Butsch, from whom did you buy next? A. I started to buy from Mickey.

"Q. From whom? A. From Mickey Meyers.

"Q. When was it you started to buy from Mickey Meyers? A. One time he came up to my place, if I needed any moonshine, and I said yes, and that is the way we started to deal. * * *

"Q. Who collected for the stuff you ordered from Mickey? A. Mickey. * * *

"Q. When was the last time you bought any stuff from Mickey? A. Oh, before—maybe four months ago, or five months ago.

"Q. Was that before Christmas or after Christmas? A. About *six* months ago, since I got that subpœna, I quit, I didn't get—

"Mr. Coll: Wait a minute, I object to

proof of any sales or acts after the finding of the bill of indictment.

"The Court: What can you say about sales after the finding of the indictment, Mr. Smith?

"Mr. Smith: If competent at all, your Honor, it is competent to prove guilty knowledge and continuing of the system. (Objection overruled. Exception noted to defendants.)

"Q. *When was the last time?* A. Since I got that first subpœna, I from that time quit.

"Q. I didn't get that? A. Since I got that first subpœna, *last June*.

"Q. Did you buy any after that? A. No."

The witness Saling, long a bartender for others, opened his own bar in December, 1928. He was promptly raided. He was then told by a policeman (Coyne) that if he wanted to do business he would have to buy liquor from Meyers. Jimmy Swift called upon him and put him in touch with Meyers from whom, thereafter, he made weekly purchases, the liquor being delivered by unknown persons and collections made by Mickey and Sam Meyers. The objectionable testimony follows:

"Q. And when was the last time you got a delivery of either moon or good stuff from Meyers? A. The last time—You mean moonshine?

"Q. Yes. When was the last time you got any moonshine from them? A. *Last week*.

"Q. What? A. Last week.

"Q. What day? A. That was Tuesday.

"Mr. Coll: That is objected to, if your Honor please—anything after the time of the indictment.

"Mr. Smith: It is being offered on the part of the government as being competent to prove guilty knowledge, system, motive and intent.

"The Court: You mean, coming from the same place?

"Mr. Smith: Yes. (Objection overruled, exception noted to defendants.)

"Q. How much did you get last Tuesday? A. One can.

"Q. Has it been collected for? A. Yes.

"Q. Who collected for it? A. One of the Meyers.

"Q. Which one? A. One of the brothers (identifying Samuel Meyers). * * *

"Q. Now from the date when you first bought from Meyers until last Tuesday have you dealt with them regular? A. Yes.

Q. And about how often would you get a delivery of moonshine? A. Once a week."

Whether or not the admission of evidence of sales subsequent to the indictment was error justifying reversal because prejudicial depends upon a variety of circumstances, the first of which is the effect of the evidence in proof of the crime alleged. Had the crime alleged been a violation of the National Prohibition Act by unlawful sale, the admission of evidence of sale after the indictment to prove violation of the act by sale before indictment would have been plain error, fundamental, prejudicial, reversible. Thompson v. United States (C. C. A. 3d) 283 F. 895, 898; Ledbetter v. United States, 170 U. S. 606, 612, 18 S. Ct. 774, 42 L. Ed. 1162; Commonwealth v. Nailor, 29 Pa. Super. Ct. 271, 273; 31 C. J. 841, 843. But the crime here alleged was conspiracy to violate the law. The act of conspiring—agreeing, combining, breathing together in a common design—being the essence of the crime, must be proved to have been done and completed within the time pleaded in the indictment. This the government did in the case at bar by evidence which in itself was more than enough and was not contradicted. Though this evidence alone compelled conviction, the government went further in the three instances named and proved not that the appellants entered into the conspiracy after the finding of the indictment but that after the indictment they sold liquor. We are not convinced that the government's attorney at first brought out this post-indictment testimony purposely, for it came out in answer to a perfectly proper question—"When was the last time you bought any (liquor) from Meyers?"—and the answer seemed to surprise him. As the question was first asked and answered without objection, the United States Attorney, seemingly encouraged to push the inquiry, twice repeated the question to other witnesses. This, if not technical error, was unwise. Moreover the grounds on which the United States Attorney offered and the court admitted the testimony in the last two instances are not sound. They are:

"If competent at all, your Honor, it is competent to prove guilty knowledge and continuing of the system."

"It is being offered on the part of the government as being competent to prove guilty knowledge, system, motive and intent."

Therefore there remains the question whether the admission of this testimony of three witnesses, in each instance technical error, was prejudicial, for it is only on prejudicial error that reversal is warranted. ■ Buziko, the first witness, had been reg-

ularly buying liquor from Meyers for two years before the indictment was found. To Buziko's testimony that he had bought liquor from Meyers "about three weeks ago," that is, between the indictment and trial, the appellants interposed no objection nor did they contradict it, move to strike it out, or, in presenting their points, ask the court to charge the jury in respect to it. The admission of evidence, without objection at the time or motion to exclude it later, is not reviewable. McIntosh v. United States (C. C. A.) 1 F.(2d) 427, 429; Allen v. United States (C. C. A.) 4 F.(2d) 688, 694.

The next witness was Nitoski. While objection to his testimony of sales between indictment and trial was seasonably made, Nitoski was uncertain about his dates. He first said that his last purchase was four or five months ago, that is, within the period between indictment and trial. He then extended it back six months which brought it to August, two months after the indictment was found; and finally he said that since he got the first subpœna "last June" he quit. The indictment was found in June. As there was no evidence of when (after indictment) the subpœna was issued and served and as there was evidence that immediately before the subpœna was issued his purchases were made weekly, it follows there was no evidence from which the jury could have found that the witness purchased liquor from Meyers after the return of the indictment. Moreover, in the event of a gap of a few days in this comparison of dates, it appears from Nitoski's testimony that he had been making weekly purchases of liquor from Meyers for more than a year before the indictment. As this testimony of continuous pre-indictment purchases and sales was not contradicted it proved a part of the Meyers conspiracy so completely that evidence of any sales made subsequently to the indictment could not have been prejudicial.

■ There is no doubt that Saling, the third witness, testified over objection that Mickey Meyers began selling him liquor, and that he and Samuel Meyers collected for it, after the indictment was found. If this had been the only testimony of an overt act in support of the charge of conspiracy, or if it had been a small yet relatively important part of the testimony of overt acts in proof of the conspiracy, or if it had been regarded by the defendants of sufficient importance to provoke contradiction and thus became an ingredient in a controverted issue of fact, Saling's testimony might conceivably have raised a prejudice. But other testimony of conspiracy directed to these appellants concerning acts done before the indictment was such as to compel conviction wholly without regard to the acts concerning which Saling testified. The overt acts testified to by others were in number and character such as make the Saling sales insignificant. The other evidence standing uncontradicted was so strong and convincing that we cannot see how additional sales to this one customer could have influenced the jury or affected their verdict, Whitaker v. United States (C. C. A.) 5 F.(2d) 546, 548, or, in view of the record, how the appellants could have been prejudiced. Landfield v. United States (C. C. A.) 9 F.(2d) 315, 316.

■ During the trial the government started to prove what prohibition agents had found in a raid which they made on June 13, 1928, upon premises in the South Side of Pittsburgh. When its attention was called to the fact that the search had already been declared illegal, the government moved to strike out all the testimony on the subject. As the court granted the motion and thereby sustained the appellants' objection and as no exception was, or could have been, noted, there is, we think, nothing to review except, as the appellants urge, the general effect of the transaction upon the jury. This was not prejudicial.

Finding no prejudicial error in the record and no infirmity in the sentences imposed upon Mickey Meyers and Gus Meyers in view of their conviction upon more than one count and for more than one conspiracy, the judgments are affirmed.