## UNITED STATES v. HALSEY, STUART & CO., Inc., et al.

District Court, E. D. Wisconsin.
April 21, 1933.

Edw. J. Gehl, U. S. Dist. Atty., of Milwaukee, Wis. (Forest A. Harness, Sp. Asst. to Atty. Gen., of counsel), for the United States.

Theodore W. Brazeau, of Wisconsin Rapids, Wis., and Kenneth E. Walser, of New York City, for defendants.

GEIGER, District Judge.

The indictment charges that defendants, "before and at the several times of committing the several offenses in this indictment hereinafter charged against them, devised a scheme and artifice to defraud and to obtain money and other property in the manner hereinafter described, from such members of a certain class of persons hereinafter referred to as the persons to be defrauded * * * whom said defendants could induce by means of certain false and fraudulent pretenses, representations and promises, to purchase certain gold debenture bonds of the Wardman Realty & Construction Company, a corporation organized and existing under the laws of the State of Maryland, of the par value of $2,500,000, dated September 1, 1928, * * * and represented by said defendants to be secured by the deposit with a trustee of all the common capital stock and $2,500,000 of general mortgage bonds of the Wardman Real Estate Properties, Inc., a corporation organized and existing under the laws of Maryland, said general mortgage bonds being an issue (here described) secured by a mortgage and deed of trust on real estate improved with income producing buildings including the furniture, furnishings and equipment belonging to said Wardman Real Estate Properties, Inc., to-wit, on the properties known as (here are enumerated eleven buildings situated in Washington, D. C.); and thus said persons to be defrauded were to be induced to part with their money and property to said defendants in the purchases of said gold debenture bonds, which said scheme and artifice, pretenses, representations

and promises were to be and were in substance as follows, that is to say."

Without purpose now to pass on defendants' contentions that the foregoing as well as succeeding paragraphs are "surplusage," we may observe that the quoted excerpt reflects nothing more than the exercise of the entirely permissive right to describe an offense, or one or more of its ingredients, in statutory language. And while it is often stated that, under the statute in question (Cr. Code § 215 [18 USCA § 338]), the use of the mails is the gist or the gravamen, it cannot be denied that the condition of the statute, or of the offense, the wrongful use of the mails, is in the devising or attempting to devise an artifice or scheme to defraud, in whose effectuation resort was had to the mails —in other words, it would not be suggested that an appropriate characterization of such ingredient or condition may be dispensed with. For many years it has been assumed that statutory language alone cannot be resorted to as a compliance with the principle governing offenses of this character. As stated in U. S. v. Hess, 124 U. S. 483, 8 S. Ct. 571, 573, 31 L. Ed. 516:

"As a foundation for the charge, a scheme or artifice to defraud must be stated, which the accused either devised, or intended to devise, with all such particulars as are essential to constitute the scheme or artifice, and to acquaint him with what he must meet on the trial;" and that the ordinary doctrine respecting a charge in statutory language, "does not meet the difficulty here;" adding "Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."

So there is no controversy on the general principle that the statute contained as the dual elements necessarily appearing in every charge (1) one or more of the categories of scheme or artifice enumerated; and (2) a use of the mails. Nor can there be controversy respecting the necessity of describing—and that means the disclosure of facts, elements, constituting—a scheme or artifice. It involves more than the statutory or general characterizations; so that, if the present indictment contained merely the quoted portion above, plus an allegation respecting the use of the mails, it would unquestionably fail on demurrer or on other appropriate test. The indictment is drawn in recognition of

the necessity of a further statement and description of a "scheme or artifice to defraud for obtaining money or property by means of false or fraudulent pretenses, misrepresentations or promises." The averment that such a scheme was devised or that it existed does not suffice. The latter is a mere statement of the statutory fact but not of the constituent, or ultimate, though, as will be seen in many cases, quite *evidentiary*,[1] facts, which, being stated, disclose the scheme, the artifice, the pretenses, and their false and fraudulent character.

If, then, we proceed with the indictment in its statement of "The substance of the scheme" following the portion hereinbefore quoted, we find it averred that "it was a part" thereof: (1) That defendants "were to and did engage in an extensive bond selling campaign for the sale of and did sell," under the name of the corporate defendant, the gold debenture bonds, referred to; (2) "with the aid of circulars, booklets, salesmen's memoranda and advertisements furnished by the defendants in divers instances," to the persons to be defrauded, and (3) "of certain false and fraudulent pretenses, representations and promises contained therein," and (4) in divers oral communications, (5) were to obtain the moneys from said persons, and (6) were to and did convert them to the use of the corporate defendant, and (7) without rendering anything of any adequate, reasonable, appreciable, or commensurable value therefor.

Whatever may be said of this as an attempt to indicate the machinery, or method of carrying out a scheme, or as indicating *sources* of evidence which, being produced, may then be discerned to be of relevancy, nothing so alleged described the scheme, the false representations or pretenses. For example, to say that part of the *substance* of a scheme was found in *certain* false and fraudulent representations which in turn were contained in circulars, booklets, salesmen's memoranda, advertisements, or in divers oral communications, leaves the scheme, within the principles we have noted, undescribed, and therefore undisclosed and leaves the indictment as averring the existence of a devised scheme whose *statutory category*, not its *character (as made up of constituent facts and elements)*, is merely restated.

The indictment next avers as "a further part" of said scheme and artifice to defraud, and in order to induce persons to believe that said gold debenture bonds were and would be

---

[1] The italics herein appear in the opinion.

(1) income producing investments until paid, and (2) good, safe and sound investments, they, the defendants "were to and did wilfully, knowingly and fraudulently conceal from, and misrepresent to, said persons * * * the actual and true earnings and income of said Wardman Realty & Construction Company" and said "Wardman Estate Properties, Inc." and "were to and did represent to said persons * * * that, on the basis of a then recent independent estimate, the annual consolidated earnings and income of (said two companies) would be sufficient after paying costs of operation to pay interest charges on the underlying funded debts of said company outstanding with the public, including said gold debenture bonds, and leave a substantial sum over and above; and which estimate, as said defendants well knew, was far in excess of the actual and true annual consolidated earnings and income of said companies and was misleading and fraudulent *because,* as said defendants well knew, the annual consolidated earnings and income of said (two companies), the true amount of which said defendants concealed from said persons to be defrauded as aforesaid, were insufficient and inadequate, after paying the costs of operation, to pay interest charges on the mortgage indebtedness of said companies outstanding with the public, including said gold debenture bonds."

It may be noted that apparently the purpose of this allegation is to set out that two things were done: First, a concealment of the actual and true earnings and income of these two companies; and, second, a representation that on the basis of a then recent independent estimate the consolidated earnings of the two companies would be sufficient to pay interest charges and leave a surplus. But apparently the relevancy of both of these are said to arise out of their use "to induce" belief in the income producing qualities of the bonds and their soundness as investments. As will shortly appear, the indictment proceeds later to make the income producing character of the bonds and their safety and soundness as investments the subject of specific representations said to be false and fraudulent pretenses and promises, "by and in circulars, booklets, salesmen's memoranda, advertisements, and oral communications." Such specific representations, three in number, are then set out in the indictment:

(1) That said gold debenture bonds were and would be income producing investments until paid.

(2) That said gold debenture bonds were and would be good, safe, and sound investments which would be paid on or before their maturity.

(3) That said gold debenture bonds were amply secured by the deposit with a trustee of all the common capital stock and $2,500,000 general mortgage bonds of said Wardman Real Estate Properties, Inc.

Now, in considering the questions arising upon the motion, there are two propositions urged by the government which, stated broadly, may be conceded and still not be helpful in disposing of the matter. Thus a rule, broadly speaking, that, when particulars are furnished, the party furnishing them is bound thereby, and a second rule, that a party is not obliged to plead or particularize evidence, are both consistent with the right of an opposing party to demand a more particular statement, and with the duty on the part of the court to recognize such right. If this were true, it would be a sufficient response to every demand for particulars that the adversary did not care to comply because it involved binding him; and the response that certain particulars might have the dual quality of evidence and also of ultimate facts would, if recognized, lead ultimately to respect a pleading in statutory language as always adequate.

But, in considering the purpose of motions of this character and the liberality with which they have been recognized, the adjudicated cases which deal with questions arising on demurrer or with the sufficiency of indictments after conviction, go very far in at least giving us illustrative examples of situations in which a call or demand for particulars was indicated to have been a matter of right, but which, not being made, was waived by going to trial. In the present case, the defendants have not questioned the sufficiency of the indictment as comprehending the ingredients of the statutory offense. In other words, the three representations last above noted, on demurrer will stand the test, and may be viewed as representations, though general, of matters of fact, which, being negatived respecting their truthfulness, and being charged to have been made with fraudulent intent, together furnish ultimate fact ingredients of a scheme, artifice, or pretense. But, as has been observed, this sufficiency does not gainsay the rightfulness of a demand for further particulars. It is my judgment that in this situation the merit of a demand for particulars may well be tested out by inquiry respecting the *probabilities* that defendants are sufficiently advised; or, stating

it somewhat differently, Is the indictment so framed that defendants, or some of them, may genuinely question or entertain real apprehension, not whether the indictment contains a charge of violating the postal statute, but respecting both the range and the character of proof with which they may be confronted? Assuming that the indictment contains three, and possibly four, allegations of "representations" made, as above pointed out —that is, the allegations with respect to "income producing investments," "good, safe, and sound investments," "amply secured"— the difficulties confronting defendants arise, so they claim on this motion, out of (1) the entirely general character of the alleged representation; but also, if not more clearly, out of (2) equally general, equivocal, questionably relevant, and, to some extent, repugnant, allegations which professedly aim to *negative* the *truth* of the alleged representations.

Now, if it be assumed, broadly, that representations such as "income producing," "good," "safe," "sound," "amply" secured, refer basically to *values* of securities sold or offered to be sold, any *negation* of the truth of such representations should, by the same token, be effective to exhibit *actualities* of *value*, not merely possibilities that such *negation if* established *may* show or be a basis upon which to infer actualities, but also that other hypotheses of negation will not be resorted to. I think an examination of the allegations will make the thought tolerably clear; and, for the present, the allegations that fraudulent representations, pretenses, and the like were made "by and in circulars, booklets," etc. (without setting them out), will not be considered.

The first such representation is that the debenture bonds "were and would be, income producing investments until paid." And the questions at once arise, Is the truth thereof negatived by the averment that it was "false, *in that,*" the Wardman Company (1) "from the beginning was and had been a losing venture"; (2) and would produce no *bona fide profits sufficient* to pay" said bonds *at maturity* "or at any other time"; or (3) "any but a *small part* of the interest thereon"? Let it be assumed that the broad representations that a debenture is an "income producing investment" means that there is *something* back of it as a basis of credit, as we may call it, which will yield as income (on its principal sum) the *stipulated rate of interest.* Is the truth of the representation negatived by the assertion that its maker was a "losing venture" howsoever, and with reference to

what, *that* may be defined? Or again, is it negatived by the assertion that the maker's *bona fide profits* will be insufficient to pay the *principal,* at *maturity?* Does the representation mean, or will proof be offered to show that it meant or means, that there was a representation of income or *bona fide* profits of the maker, in a losing venture, adequate to pay both *current income during the entire term* (nowhere stated), and also the principal at the end thereof? Concretely, if the debenture has a twenty-year term at 5 per cent., will it be claimed that annual *bona fide profits* while sufficient to pay annual interest, but not to yield an additional 5 per cent. annually with which to accumulate the maturing principal in *twenty years,* is proof in negation of the truth of the representation? And these further queries respecting the meaning, either that to be given or that which may be claimed, to or of "losing venture" or *"bona fide* profits." What if any relation has, or will either of these have, as an exclusive or nonexclusive method of determining the basic question of *value,* in so far as the latter, being determined, *in some way,* may be claimed to be of pertinency in negativing the truth of the representations? When, therefore, to the allegations thus last above noted, there is added the disjunctive clause, "or *any* but a small part of the interest thereon," the query at once arises whether there may be a purpose to charge and prove, first, the falsity of the representation by showing what may be comprehended within a definition of a "losing venture"; secondly, the inadequacy of *bona fide* profits to pay the principal at maturity; and, third, inadequacy of profits to pay any but a *small part* of interest. What is the measure of *bona fide* profits in arriving at the sum available for interest charges? Will it be contended that the profits claimed were not *bona fide* because inadequate reserves for depreciation and the like were set up? And that such inadequacy was so great as to constitute bad faith And will the same or similar tests be applied to establish the "venture" as "losing"?

This analysis is undertaken, not to test out the legal insufficiency of these excerpts as they might be considered upon demurrer, but, as I have indicated, to test out the probabilities that, if queries such as have been herein put are properly aroused by the language and form of the indictment and are not answered—defendants are left in serious uncertainty respecting the real charge and the defense, if any, thereto. This necessitates recurring to the question whether, upon the allegations, the defendants can apprehend, not

merely the charge of devising a scheme or artifice, but the constituent elements thereof, so that with fair certainty they may apprehend the proofs probably forthcoming. And again it may be observed that any scheme or artifice, if based upon representations, must be disclosed, first, by such representations, and, secondly, in asserted countervailing actualities; the *disparity, if substantial and ascribable to fraud or bad intent, going to make up the scheme.* It may be assumed that the various queries in the foregoing discussion of this first alleged representation and the attempted negation of its truth are fairly aroused in the minds of the defendants, upon the language and form of the indictment; and therefore they must arise upon a trial in determining the scope of proof. Taking, perhaps by way of repetition, the question respecting *bona fide profits* "sufficient" or adequate to pay the principal of the debentures *at maturity,* or the alleged "losing" character of the "venture," if it be admitted that this language may indicate, prophetically, a purpose to enter a large field, it must be likewise admitted that it may be wholly indeterminate, and lacking in definitiveness of boundary, with quite vague and loose as language used without any indication, for example, of what will be *claimed* to be standard of *bona fides* in determining profits. It may be proper in this connection to refer to the general allegations of the indictment dealing with the two corporations—one of which is somewhat parenthetically characterized as a "subsidiary" of the other. The business of neither is stated—though it may be inferred that one was an owner and operator of extensive real estate, "income producing properties." The financial condition of neither—at any time—is the subject of any averment, save that one was and had been a "losing venture." No dates, excepting of the debentures and securing mortgage notes, and the date of use of the mails, are given. True, this may not vitiate the indictment. The date when the scheme was devised may not be a part of the offense; but the defendants before being forced to trial may be entitled to some information, especially when the indictment contains no other allegations apprising them with fair certainty or approximation of what may be expected; and particularly when as we have seen, such indictment, in its attempted description of the ingredients of the scheme, inescapably arouses the queries discussed. I am satisfied that the demands for particulars on the parts of the indictment thus far considered are well assigned.

In the consideration of the second representation—"good, safe and sound investments which would be paid *on or before maturity,*" a quite similar situation is disclosed. And, as heretofore, it may be assumed on this motion that the alleged representation is one which may form the basis of a scheme or artifice, provable to have been made by the defendants *in some way* (therefore good on demurrer). Laying aside considerations respecting the manner of proving the making of such representation, or its meaning and scope, the defendants' contention respecting the attempted negation of the truth is again pressed as a dominant phase of their move for particulars. Thus the allegation in negation of the truth of such representations is the falsity *in that* neither the (1) then, (2) the past, (3) prospective, (1) management, (2) operation, (3) development, or (4) *value* (not of property) of the (1) *business* of the obligor, nor, it is added, its (2) profits, (1) past and (2) present, nor its (3) prospective *future business* were such as to justify or *warrant* such statements, or any *reasonable belief* that an investment in the debentures would be safe and sound investments which would be paid on or before maturity *"in any fair degree,"* or "anything but a losing investment" "resulting," it is added, "from the insufficiency of the earnings and income of the obligor" to meet interest and principal payments "on the bonds" and the *"failure* of the assets * * * to afford ample security" for the payment of the bonds.

Thus, the first part of such attempted negation may be reduced to this: That the representation was false because certain enumerated things, past, present, future, e. g., management, operation, development, and value of a *business* (none of which is given any characterization) *did not justify or warrant the representation* or a *reasonable belief* that, in substance, the *representation was true.* I think defendants may well inquire what quality and quantum of proof may be expected to establish *management, operation, development,* or *value* of a "business" of an obligor in periods designated as past, present, and future, or of *three* different periods of business, regardless of *value,* or three like unnamed periods of profits, or the failure of the "assets" of the obligor to afford "adequate security" for payment. Putting it another way: These various items, singly or in the aggregate, as of a past, of some present, and for some future time, apparently are to become the subject of *some sort* of testimonial elucidation, but only to prove that whatever such elucidation or *character* may so result, did not *warrant* the representation, or a *rea-*

sonable belief, in the soundness of the bonds. Putting it more narrowly, what proof may or must defendants reasonably expect as forthcoming which, being produced, will bear upon "management" of a business, in its pertinency to or as a "warrant or justification for, an opinion or representation," or a "reasonable belief" respecting securities? What kind of "operation," "development," "value of business," is really in mind as furnishing the basis of negation of the represented fact of soundness of the securities with reference to payment "on or before maturity"? Will it be contended, testimonially, that past and present management, operation, or development were deficient, incompetent, or the like, resulting in low "value of the business" and in turn precluding warrant, justification for, or "reasonable belief" in "soundness," past, present, or future; or will it be contended that management, operation, and development, though of the highest order of capability, efficiency, still made it impossible for the security to be or become sound, or a reasonable belief respecting it? It is my judgment, heretofore expressed, that these queries must arise upon the language of the indictment at the instance of the defendants in their attempts to meet the charge. They may put them in another form, e. g., What will be claimed with respect to (1) management, (2) development, (3) operation, and (4) (presumably consequent) profits, or (5) value of a business? It seems rather clear that in pleading these items so generally there must be an intention to give each of them some quality or more particular characterization, which, being given, will be claimed to show support for the conclusion respecting a scheme or pretense. But, as hereinbefore suggested, as the pleading stands, the basic facts are undisclosed, and, as appears on consideration already given to another part of the indictment, there is a wide difference (in pleading) between characterizing a relationship of possible inference between undisclosed basic facts and a representation, and, in stating the facts to the end that their statement will disclose and tend to justify the inferred relationship. More or less argumentatively charging possibility of inference, is not, in the sense of fair definitiveness and certainty in pleading, a charge of fact. It is a mere charge of what may or will be claimed as a justifiable inference, a characterization of relationship or results of comparison, if and when the (now undisclosed) real quality and portent of such facts (e. g., the kind of "management," "value," "development") are disclosed. And, until such facts and their qual-

ity are disclosed, the defendants properly may assert that they do not, cannot, know, except as they may cover a large field of conjecture, with what they will be confronted, not as evidence, but as constituent facts of the alleged scheme.

The third alleged misrepresentation, that the bonds were "amply" secured and the allegations in negation thereof arouse queries very much like those already discussed. It may again be conceded, for the purposes of the present motion, that a general representation of "ample" security is capable of definition and scope of application as a representation of a matter of fact. But when falsity is asserted in that stock pledged was of "little if any value," that mortgaged bonds issued by the corporation whose stock was pledged as just noted likewise were "of little if any value," the question at once arises whether the object of the allegation may be to prove that both were valueless, because, if the stock had some value, the mortgage bonds prima facie ought to be regarded as approaching par or at least considerably greater soundness in value than the stock. But, even assuming that there may be discerned an intent to challenge the security as "ample," and that the stock and the deposited mortgage bonds were of little if any value, the reasons given, viz. "because" the general mortgage bonds were subject to junior liens and to another certain mortgage bond issue, and the real estate properties were not and would not be of sufficient value to pay the prior issues, nor anything on the pledged capital stock; and, again, an alleged deficiency of earnings—these reasons, it may be fairly said, again fail to apprise the defendants respecting the claim that will be made respecting values of concrete subject matter. Their inquiry respecting the scope of this issue, for example, whether utter insolvency will be claimed, may be subject to wholly speculative answers.

What, it may be asked, is reasonably clearly indicated, will be the forthcoming proofs respecting single or aggregate values of eleven properties when set over against aggregate liabilities It may fairly be questioned whether it is the purpose of the government to establish that the latter, assumed for illustration to be $18,000,000, were backed by property whose value in the aggregate may be claimed at the trial to be short of being "ample" by a small, or by an atrociously large, margin. It is difficult to understand why the fact of value in terms of money should not be disclosed in a more par-

ticular statement in negation of the truth of the representation, not as evidence, but as an *ultimate fact* constituting an element of the scheme or pretense.

 Whatever the fact so stated may be, its constituent and elemental character can hardly be said to be purely evidentiary in the light of the general rule respecting the necessity of apprising the accused of the basic particulars. Allegations of "value" of property, of assets, or of "quality of security" as "ample" or not "ample," that the "value" was not "sufficient," or the security was not "ample" because "value" of assets was not "sufficient," even if regarded as allegations of matters of fact, are not to be justified as adequately specific, or as comparable to or with an allegation (illustrative) that assets were worth $10,000,000; nor are the respective allegations to be distinguished on the theory that the latter, though far more specific, is either *less ultimate* or, *merely evidentiary.* How the fact, whichever way stated, is to be proven, that is, upon resort to what kind of testimony, is an entirely different matter, concededly not a subject, ordinarily, of a motion for particulars.

In thus expressing my feeling that the merit of defendants' motion is entitled to recognition, it may again be observed that the government's fear, expressed in its brief, that, by complying with a demand for particulars, it may be bound by a response, ought not to be urged as a reason for not wanting to comply. In the respects herein discussed, of great generality of allegations, which presumably "cover," as we may term it, not merely detail of evidence, but facts of concrete ultimate character, it must be assumed that such facts are known, that they can be disclosed, and are undoubtedly in contemplation of more particular statement, not merely evidentiary, on a trial. It hardly should be indulged as an answer to the motion that antecedent disclosure will make the case other or different from undisclosed contemplation, or that disclosure must result unjustly to the government. I have indicated that, in the main, the motion calls for no transgression of any rule against pleading evidence; for the matters called for are quite ultimate, and, if alleged, may bring to the pleading both reasonable particularity and greater certainty. The case, in my judgment, quite aptly illustrates the observation made in an opinion cited by the defendants that, on a demurrer to an indictment like the one before us, leniency or liberality of view may be taken to test out legal sufficiency, but that on a motion for particulars a more critical attitude should be aroused.

Whether every demand made by defendants must be complied with need not, and, I think, should not, be determined in this memorandum. It has sufficed, so it seemed, to point out fundamental aspects subject to a call for particulars; and the settling of terms of an order, likewise the determination of defendants' request that portions of the indictment be held to be surplusage, may both be taken up upon reasonable notice by either party to the other.