**UNITED STATES v. GREVE et al.**
(three cases).

District Court, E. D. New York.
March 27, 1934.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Emanuel Bublick, Henry G. Singer, and Maxwell Parnes, Asst. U. S. Attys., all of Brooklyn, N. Y., of counsel), for the United States.

George Z. Medalie, of New York City (George Z. Medalie and Louis Haimoff, both of New York City, of counsel), for defendants.

INCH, District Judge.

On or about January 2, 1934, the grand jury, Eastern district of New York, duly filed three indictments charging defendants with the commission of certain offenses against the laws of the United States. These indictments are numbered 35910, 35911, 35912, respectively.

Thereafter, the defendants duly appeared, pleaded not guilty, with leave to withdraw, demur, or otherwise move, and on or about February 9, 1934, made these applications for a bill of particulars.

The applications duly came on to be heard and were argued and opposed as one motion. It is possible therefore to make one decision, although separate orders will be entered.

It appears from the several indictments and motion papers that this is not the ordinary application that usually confronts the court in criminal causes. On the contrary, both the indictments and the applications for the bills of particulars show a most complicated and involved business situation, relating to large and substantial corporations and their respective officers and directors, concerned with a most extensive real estate and mortgage business of many years standing, running into the millions of dollars, and covering thousands of transactions, all of which, presumably, is to be eventually submitted to a jury of twelve laymen for their verdict.

The preparation for trial, therefore, both by the government and by the defendants, will require a great deal of work in order that the facts may be intelligently presented and understood.

While the government is not to be unduly limited in its proof, the rights of the defendants to clearly understand, in advance, what they must be prepared to meet is plainly indicated and required.

I am assuming that the indictments sufficiently charge the commission of crime. Such questions are not before me in any way; nor is any decision on such questions to be inferred from this decision. These applications are solely for particulars which the defendants claim they must have in order to properly prepare their defense and which they cannot obtain from the indictments.

With this introduction we may turn briefly to the indictments and the various requests of the defendants for particulars.

The longest indictment is No. 35910. By this indictment (first count) the defendants Greve, Fox, Bailey, Pender, and Wheelock are charged, in substance, with an unlawful scheme to defraud the New York Stock Exchange, and also other persons who could be induced to buy stock of the New York Investors, Inc., by means of false pretenses and fraudulent artifices, etc., inducing the said prospective buyers of the stock, who are called for lack of a better name, "victims," to pay money for the stock to the defendants and thus fraudulently deprive these persons of the value of such "stock, dividends, and profits appertaining thereto."

The indictment also charges that the defendants were officers of the New York Investors, Inc., and its managers, and that this company controlled, by stock ownership, a number of important subsidiary companies. That it was important to this alleged scheme that the New York Stock Exchange list the stock. That accordingly, in order to obtain this privilege, and as a part of the fraudulent scheme,

knowingly and intentionally entered into by the defendants, false balance sheets purporting to represent a surplus of assets of the New York Investors, Inc., and subsidiary companies were gotten up showing a "surplus" of approximately $35,000,000 by means of an item entitled "Special Surplus Arising From Valuation of Investments" and purporting to be an honest "revaluation" of the assets of the companies over and above the value of said assets as they were carried on the books of the New York Investors, Inc. That this fraudulent "write up" of the value of investments included also a false "increase" of the value of the stock of one of the largest subsidiary companies and of the value of the real estate owned by the various companies. That the defendants likewise knowingly issued false statements of the business condition of the New York Investors, Inc., all of the above acts being a part of a general scheme to defraud the so-called "victims." And finally, that the mail was used by sending through it, publications, circulars, etc., containing the alleged fraudulent representations.

The second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth counts relate to instances where individual letters were mailed pursuant to this alleged general scheme to defraud.

The offenses above are based on alleged violations of section 338, title 18, U. S. C., 18 USCA § 338 (Criminal Code, § 215), relating to using the mails to promote frauds.

The remaining (fourteenth) count charges a conspiracy to defraud, in connection with the general scheme already mentioned, in violation of section 88, title 18, U. S. C., 18 USCA § 88 (Criminal Code, § 37).

The "high spots" in this indictment appear to be the claims that the defendants fraudulently "reappraised" assets of the companies so as to show a higher but fictitious value, the alleged fraudulent balance sheets which would be mailed to possible buyers of the stock · all of which were apparently, on their faces, the result of an honest revaluation of assets but which in fact the defendants knew were false, and that the New York Stock Exchange was also misled by such fraud into listing the stock.

Thus, by this fraud, the defendants are alleged to have induced the "victims" to part with money and property and "invest and keep invested" money and property in these various companies, particularly the New York Investors, Inc., which money the defendants would "convert" to their own use.

And, finally, that the defendants made "secret profits" represented by wrongful appropriation of profits that belonged to the corporation, and by other transactions which were merely "colorable." The conspiracy, as I have stated, related to the alleged unlawful agreement to do these various fraudulent things.

All of this, under the circumstances, is most general and is reasonably likely to cause great difficulty in preparing a defense.

The defendants ask in their application for a bill as follows:

"(a) The particular parcels of real estate of the New York Investors, Inc., and its subsidiaries which are alleged to have been overvalued in the revaluation of assets.

"(b) A description sufficient to identify the false communications alleged to have been sent and the respect in which each of the said communications is alleged to be fraudulent and false.

"(c) With regard to the alleged sale, transfer or encumbrance of certain assets which had formed a part of the assets stated to have been falsely and fraudulently written up, a description of the properties claimed to have been transferred and of those claimed to have been encumbered between December 31, 1929, and December 31, 1932, together with the dates of the said transactions.

"(d) 1. The nature of the arrangement alleged to have been made between the respective defendants for the sharing of secret profits, together with the terms and the date thereof.

"2. The sales and exchanges between the New York Investors, Inc., and its subsidiaries which resulted in the said profits, together with the dates thereof.

"3. A description sufficient to identify those sales and exchanges which resulted in profits to New York Investors, Inc., and those alleged to have been colorable devices to enable the defendants to appropriate the property of New York In-

vestors, Inc., its subsidiaries, and 'the victims.' "

The business of the New York Investors, Inc., and its subsidiaries consists of hundreds of transfers, etc., of property, involving many millions of dollars. There is nothing to indicate that the government confines its attack to one item of "overvaluation" in the alleged fraudulent "write up," and it seems reasonable to believe that there may be items out of the many as to which the government will have no complaint.

This indictment covers no small period and the mere fact that the grand jury has been able to make a general charge, sufficient for prosecution, does not indicate that sufficient also appears therein to make the present request of the defendants as one interposed merely for delay or unreasonable. The defendants are presumed to be innocent and must prepare to meet reasonably definite proof of guilt.

The defendants are not entitled to evidence by which the government intends to prove items of alleged fraudulent "overvaluation," nor is this involved in the request of the defendants, except to direct the proof to such "items."

I have commented on this at this time for the purpose of indicating that this indictment, while possibly sufficient for prosecution, as to which I make no comment, nevertheless, is largely a "blanket charge" as to a most complex and extensive series of transactions covering a considerable time, and made by large and very active corporations.

We now come to indictment No. 35911. This indictment charges defendants Greve, Fox, Bailey, Pender, Wheelock, Parker, and Reimer with intent to defraud certain individuals, named and unnamed, by inducing them to "buy bonds" of one of the subordinate companies when they knew that this company was insolvent, and that as a part of the scheme it was contemplated "to have the company declared a bankrupt." That they made "false and fraudulent transfers" and "concealed assets" so as to make them "unavailable" for the use and benefit of these bondholders. That as a part of the plan they had the company declared a bankrupt and organized a bondholders' committee to "advocate," I presume, a composition, and thus the said committee was not an "independent" committee and was nothing more or less than the defendants "seeking to defraud the 'victims,' " etc.

Here again the use of the mail is alleged, and the remainders of the counts second to fifteenth, inclusive, relate to the individual "victims."

The company in question is the Realty Associates Securities Corporation which, the records of this court show, offered a composition, which was approved by the court, with the sole exception as to the right of a bondholders' committee or other committee to be compensated for their services; a legal objection that was sustained by the Circuit Court of Appeals of this Circuit (In re Realty Associates Securities Corporation, 69 F.(2d) 41), and which thereupon resulted in the offer, deleted of this item, being again overwhelmingly accepted by the creditors. This second submission and acceptance was also after fair notice had been given to the creditors of the charges made in this indictment relating to this bondholders' committee. To be sure this composition has not yet been again finally approved by this court, but I mention this solely to show the present status of the matter as indicated from the records of this court. Under such circumstances it seems reasonable that defendants may well be concerned with what exact charges they must still be prepared to meet.

The requests of the defendants for particulars are as follows:

"(a) A description sufficient to identify the particular transactions by which the cash assets of the bankrupt corporation are alleged to have been depleted, together with the dates thereof.

"(b) A statement as to whether the alleged depletion of cash assets for the purpose of making it appear that the assets of the bankrupt were in large part invested in long term bonds, was produced by the purchase of the said non-liquid securities or whether the cash assets are claimed to have been otherwise depleted.

"(c) The nature and extent of assets alleged to have been transferred and concealed and the means employed to accomplish the said transfers and concealments, with the dates of same.

"(d) The particulars as to the manner in which the alleged nullification by the defendants of the guaranty of the New

York Investors, Inc., redounded to the benefit of the defendants.

"(e) A statement as to whether the false and fraudulent representations alleged to have been made concerning the stability and financial condition of the New York Investors, Inc., are in addition to and distinct from, the misrepresentation alleged to have been made concerning the worthlessness of the assets of the said corporation or have simply been particularized by the latter allegation."

The final indictment, No. 35912, charges the defendants Greve, Fox, Bailey, Wheelock, Pender, Fisher, Graham, Braislin, Burchell, and Moses with knowingly and fraudulently and in contemplation of bankruptcy made certain "transfers of property and cash" to defeat the Bankruptcy Act in connection with the bankruptcy of the Realty Associates Securities Corporation and "concealing" assets of that company; the said defendants being alleged to have been officers and directors in control of the bankrupt. It also alleges a conspiracy to "transfer and conceal assets" in "excess" of the sum of $500,000, and also to put through this composition, to which I have already referred.

The defendants request the following particulars:

"1. As to the first count:

"(a) A description of the property alleged to have been concealed.

"(b) The exact date of each and every alleged transfer or, if the exact date is unknown to the United States, then, in lieu thereof, the approximate date of each and every alleged transfer.

"(c) The approximate amount by which the cash assets alleged to have been transferred, exceeded the sum of Five Hundred Thousand ($500,000) Dollars.

"2. As to the second count:

"(a) A description of the property alleged to have been concealed.

"(b) The date or dates upon which the alleged concealment is deemed to have occurred.

"(c) The amount by which the value of the property alleged to have been concealed exceeds One Hundred Thousand ($100,000) Dollars.

"3. As to the third count:

"(a) The manner in which the defendants' interest in the Realty Associates, Inc., is deemed to have adversely affected the creditors and bondholders of the bankrupt.

"(b) A description of the assets concealed and transferred and the nature of the said concealment and transfer, together with the dates thereof."

The cases in regard to granting or denying bills are very many and colored by the particular controversy before the court. There is, however, a plain middle ground shown by the decisions which can be safely stood upon and which indicates the course that should be followed here.

The videlicet that appears in an indictment does not take the place of a bill of particulars, although in many cases it may obviate the necessity for one. It may, however, restrict and confine the general expression of the charge. 31 C. J. p. 666, § 184, and cases cited. But even this is not the same as a limitation imposed by a bill. Meyers v. United States, 36 F.(2d) 859 (C. C. A. 3).

A bill of particulars is no part of the record. It neither makes the indictment demurrable, nor does it prevent it from being so. Dunlop v. United States, 165 U. S. 486–491, 17 S. Ct. 375, 41 L. Ed. 799; Peck v. United States, 65 F.(2d) 59–61 (C. C. A. 7).

The application is one addressed to the legal discretion of the court. Dunlop v. United States, 165 U. S. 486, 491, 17 S. Ct. 375, 41 L. Ed. 799; Rosen v. United States, 161 U. S. 29–35, 16 S. Ct. 434, 480, 40 L. Ed. 606; Wong Tai v. United States, 273 U. S. 77, 47 S. Ct. 300, 71 L. Ed. 545. And the situation at the trial, where a bill has been asked for and denied and defendants convicted, may show to the appellate court, which considers such a situation, that the denial was an abuse of discretion and result in a reversal. Singer v. United States, 58 F.(2d) 74 (C. C. A. 3).

Thus the facts of a particular case may be so complicated and confused as to make this application for a bill a substantial right of the defendant which has been violated by its denial.

In all cases the denial raises the question whether or not the denial caused

the defendants to be taken by surprise or prejudice. Wong Tai v. United States, 273. U. S. 77, 47 S. Ct. 300, 71 L. Ed. 545. And even "too broad" a denial of the request for a bill may be considered whether or not it was so prejudicial as to require reversal of the conviction. Kanner v. United States, 21 F.(2d) 285–288 (C. C. A. 2).

■ Accordingly, the general rule appears to be that where the indictment, taken as a whole, can be shown reasonably not to sufficiently advise the defendant so that he may properly prepare his defense and avoid surprise and substantial prejudice at the trial, the remedy of such a defendant is to apply in advance for a bill of particulars. Bartell v. United States, 227 U. S. 427, 33 S. Ct. 383, 57 L. Ed. 583. 31 C. J. 750, Section 308 and cases there cited. Zoline's Federal Criminal Law and Procedure, Vol. 1, page 205, § 257. United States v. Kam (D. C.) 57 F.(2d) 550; United States v. Halsey, Stuart & Co. (D. C.) 4 F. Supp. 662–664; Olmstead v. United States, 29 F.(2d) 239–242 (C. C. A. 9).

■ Of course the defendants are not entitled to the evidence in possession of the government. Kettenbach v. United States (C. C. A.) 202 F. 377–382; Rubio v. United States, 22 F.(2d) 766 (C. C. A. 9).

Following the above general rule, we find that the courts have not hesitated to indicate the necessity for a bill of particulars.

"The facts present a tangled web not easily unraveled. * * * Of course, the right to a bill of particulars does not give validity to a void indictment, but this is a case where such bill of particulars might very properly have been asked if defendants did not understand the nature of the charge against them. As the case will have to be reversed on other grounds, defendants will be in position to apply for a bill of particulars, if desired, on a subsequent trial." Gerson v. United States, 25 F.(2d) 49–51–53 (C. C. A. 8).

"Is the indictment so framed that defendants, or some of them, may genuinely question or entertain real apprehension, not whether the indictment contains a charge of violating the postal statute, but respecting both the range and the character of proof with which they may be confronted." United States v. Halsey, Stuart & Co. (D. C.) 4 F. Supp. 662–664, 665.

It appears that, under this general rule, items have been allowed which, in the absence of different and other circumstances, would have been refused by the court.

Thus the "name" of a person who received alleged stolen property was indicated as proper if it appeared to be essential to the defense. Kirby v. United States, 174 U. S. 47–64, 19 S. Ct. 574, 43 L. Ed. 890. The same as to an alleged obscene paper and its contents. Rosen v. United States, 161 U. S. 29, 16 S. Ct. 434, 480, 40 L. Ed. 606. Amplification of the charge of unlawful use of the mail also has been allowed. Durland v. United States, 161 U. S. 306–315, 16 S. Ct. 508, 40 L. Ed. 709. Where identification of "public speeches" and "private solicitations" and "parts of a magazine" appear to be essential for the proper preparation of the defense, such information could be obtained by bill. United States v. Eastman (D. C.) 252 F. 232. Where a definition of the word "protection" and "interference" is deemed essential a bill was allowed. United States v. Grossman (D. C.) 55 F.(2d) 408.

Sufficient appears from the above citations to indicate that the question of whether or not a bill is proper depends upon the circumstances and facts of each case. The discretion of the court may be abused by laxity or prejudicial strictness.

The question therefore presented is whether it is fairly and reasonably shown to the court that, entirely aside from the validity or invalidity of the indictment, it is reasonably essential that the defendant be informed of the charges against him, especially in a complex affair, so that he may properly prepare his defense and avoid surprise and serious prejudice at the trial.

In the application before me we have involved officers and directors of a series of companies, among the largest and best known real estate and mortgage companies in greater New York. The transactions indicated in the indictments are necessarily complex, varied, and numberless. The amounts and values are exceedingly large. The situation presented is indeed "a tangled web not easily unraveled." All the circumstances indicate

that possibly the grand jury itself, while they deemed that they had sufficient presented justifying, in their opinion, indictments, could not have covered all the details of the many transactions with the care that they would have done had more time been considered necessary for the laying of the charge.

Assuming, therefore, as I have, without deciding, that the indictments are sufficient to make the charge, it is plain to me that before the defendants can properly prepare their defense they must have additional information, otherwise there is no doubt that they may be surprised and greatly prejudiced at the trial.

Accordingly, as to indictment No. 35910, the application for a bill is granted as indicated therein, except as to "dates" asked in (c) last line, and in (d) 1 and 2. As to indictment No. 35911, the application for a bill is granted as indicated therein, except as to "dates" in (a) and (c). As to the indictment No. 35912 the items 1 (a), 1 (c), 2 (a), 2 (c), 3 (a), 3 (b), except as to "dates," are allowed. 1 (b) and 2 (b) are disallowed.

Settle order on notice.